**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| **ANTHONY McCASTER,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| **v.** | ) | **No. 12-2867-STA-cgc** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |

**ORDER DENYING MOTION PURSUANT TO 28 U.S.C. § 2255
DENYING MOTION TO ACCEPT MOTION OUT OF TIME
DENYING MOTION TO AMEND
DENYING CERTIFICATE OF APPEALABILITY
CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH
AND
DENYING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL**

Before the Court is a Motion Pursuant to 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody (the "§ 2255 Motion") filed by Petitioner Anthony McCaster ("McCaster"), Bureau of Prisons register number 22942-076, an inmate at FCI-Forrest City, Forrest City, Arkansas (§ 2255 Motion, ECF No. 1.) For the reasons stated below, McCasters's § 2255 Motion is **DENIED**.

## BACKGROUND

### I. Criminal Case Number 09-20110

On March 24, 2009, a federal grand jury sitting in the Western District of Tennessee returned an indictment against McCaster, charging him with one count of possessing with the intent to distribute a quantity of marijuana in violation of 21 U.S.C. § 841(a)(1), one count of possessing a firearm in furtherance of a drug trafficking offense in violation of 18 U.S.C. §

924(c), and one count of being a felon in possession of a firearm in violation 21 U.S.C. § 922(g).

(*See* Indictment, *United States v. Anthony McCaster*, 2:09-cr-20110-STA (W.D. Tenn.), ECF

No. 1.)   McCaster entered a plea of not guilty as to all charges, and the Court appointed the

Federal Public Defender to represent McCaster.   Pursuant to an agreement with the United

States, McCaster changed his plea to guilty as to the drug trafficking offense and the possession

of a firearm in furtherance of the drug trafficking offense at a change of plea hearing on July 23,

2009.   The United States agreed to dismiss the felon-in-possession of a firearm offense at

sentencing.

The presentence report ("PSR") described the following factual basis for the charges

against McCaster.

### The Offense Conduct

7.      On June 5, 2008 at approximately 6:56 p.m. Memphis Police Officers
observed two individuals later identified as Anthony McCaster and Ade
Adeimani sitting in a 1994 Cadillac with the ignition running in front of
3530 Boxdale.   Officers observed that the vehicle tags were expired.
Officers made contact with the occupants of the 1994 Cadillac who could
not produce any identification.   As McCaster and Adeimani stepped from
the vehicle, officers detected a heavy odor of marijuana coming inside the
vehicle.   Officers searched the 1994 Cadillac for safety purposes and
discovered a large freezer bag of marijuana inside the glove compartment
in front of the passenger seat where Adeimani was seated.   Officers found
another plastic bag which contained seven smaller baggies or marijuana in
the area between the driver's seat where McCaster was seated and the
console.   Underneath the bag of marijuana between the driver's seat and
console was a pistol which was recovered by officers.   The pistol was
found to be a Jimenez Arms JA9, 9mm pistol (serial #003123).   The pistol
was loaded with eight rounds in the magazine and one round in the
chamber.   A NCIC computer database check revealed that the pistol was
reported stolen in Illinois.   The marijuana was tested and weighed and
found to have a total gross weight of 129.4 grams.

8.      Anthony McCaster was interviewed and advised officers that the
marijuana (112 grams) belonged to him and he had paid $250 for the

marijuana. McCaster advised officers that he sold marijuana and powder cocaine. McCaster advised officers that the gun was his and he had paid $100 for the gun which he purchased off the street. McCaster advised that he had the pistol for protection from "folks" in the neighborhood that would try and rob him. McCaster advised that he had a prior felony conviction on drug charges for which he served two years at the Shelby County Penal Farm. McCaster advised officers that he purchased four ounces of marijuana at a time to sell and he purchased an ounce or two of powder cocaine at a time to sell. McCaster advised that an ounce of cocaine on the street was selling for between $1,000 and $1,200. McCaster stated he sold cocaine in quarter ounces for $250.

9. The Jimenez Arms, 9mm pistol recovered from McCaster on June 5, 2008 was examined by a federal agent who determined that the firearm had not been manufactured in the State of Tennessee. Case agents confirmed that Anthony McCaster was a convicted felon prior to June 5, 2008.

(PSR ¶¶ 7-9.)

The undersigned sentenced McCaster to a term of imprisonment of thirty-four (34) months as to count 1 with a mandatory minimum sentence of 60 months as to count 2 to be served concurrently to sentence on count 1, three years supervised release, and a special assessment of $200. (*See* Judgment, ECF No. 31.) McCaster appealed the Court's judgment to the United States Court of Appeals for the Sixth Circuit. The Sixth Circuit affirmed the Court's judgment, holding that the sentence was procedurally and substantively reasonable. *United States v. McCaster*, 410 F. App'x 955 (6th Cir. 2011).

### B.    Civil Case 12-2867

On October 1, 2012, McCaster filed his *pro se* § 2255 Motion. Dockery's § 2255 Motion presents two issues:

1. Ineffective assistance of counsel where counsel misadvised McCaster in regards to the "use prong" of § 924(c)(1); and

2. Ineffective assistance of counsel where counsel misadvised McCaster in regards to the "carry prong" of § 924(c)(1).

(*See* § 2255 Motion, ECF No. 1.)  McCaster alleges in his Motion that his trial counsel gave him erroneous advice about the "use prong" of 18 U.S.C. § 924(c)(1).  Counsel failed to explain that the government had the burden to prove "active employment" of the firearm by showing that McCaster "brandish[ed], display[ed], bartered and striking [sic] also most obviously fired." McCaster cites for support the Supreme Court's decision in *United States v. Bailey*, 516 U.S. 137 (1995), holding that "use" for purposes of § 924(c)(1) is limited to "active employment" of the firearm.  McCaster claims that he would not have pleaded guilty to the offense had counsel correctly explained the law to him.

In a similar fashion, McCaster argues that counsel failed to advise him correctly about the "carry prong" of § 924(c)(1) and the government's burden to prove more than mere possession of a firearm.  More specifically, McCaster argues that the United States had to show that the firearm "had some significant purpose or some effect in relation to the drug trafficking crime" or to "facilitate or have the potential of facilitating the drug trafficking crime."  McCaster claims that the evidence in his criminal case shows that he did not carry a firearm in furtherance of a drug trafficking crime; whereas, trial counsel advised McCaster that his presence near a firearm was enough to establish his guilt.  McCaster again cites the Supreme Court's decision in *Bailey* and argues that had he received correct advice, he would have insisted on going to trial.

Although the Clerk received and docketed McCaster's Motion on October 1, 2012, McCaster signed and dated the Motion May 3, 2012.  McCaster submitted his Motion on the official form and by signing the official form declared "under penalty of perjury that the foregoing is true and correct and that this Motion under 28 U.S.C. § 2255 was placed in the prison mailing system, first class postage prepaid on May 3, 2012."  (*Id.* at 9.)  McCaster attached to his Motion a certificate of service, certifying that he served a copy of his Motion on

the United States Attorney at the U.S. Attorney's Office in Memphis, Tennessee, by placing the document "into the hands of prison officials for legal mailing" on May 3, 2012. The memorandum of law attached to McCaster's Motion included an identical certificate of service.

On February 19, 2013, McCaster filed a separate Motion to Accept His 28 U.S.C. § 2255 Out of Time (ECF No. 2) accompanied by McCaster's affidavit (ECF No. 2-1). McCaster asserts that on May 3, 2012, while housed at USP-Terre Haute, McCaster "placed in the institutional mailing system one original, and two copies of my 28 U.S.C. § 2255." McCaster was subsequently transferred to FCI-Forrest City and arrived at that institution on July 19, 2012. Thereafter, McCaster contacted the Clerk of Court to ascertain the status of his § 2255 Motion only to discover that the Clerk had never received it. McCaster then submitted the § 2255 Motion again, by mailing it on September 19, 2012. McCaster argues that under the prison mailbox filing rule, his § 2255 Motion was timely filed when he placed it in the institutional mail at USP-Terre Haute on May 3, 2012. McCaster has completed an affidavit averring these facts under penalty of perjury pursuant to 28 U.S.C. § 1746. Therefore, McCaster requests that the Court accept the Motion under § 2255 as filed within the one-year statute of limitations.

On May 29, 2013, the Court entered an order (ECF No. 4) directing the United States to respond to McCaster's Motion. The government filed its Answer (Answer, ECF No. 8) on June 20, 2013. The certificate of service reflects that a copy of the Answer was mailed to McCaster at his address of record. (*Id.*) In its brief the United States contends that the Court should deny McCaster's request to accept his § 2255 Motion out of time. The government then proceeds to argue the merits of McCaster's claims in his § 2255. Concerning the timeliness of McCaster's § 2255, the United States posits that the one-year statute of limitations for McCaster's § 2255 commenced on May 15, 2011, the date on which the judgment in McCaster's criminal case

became final.  According to the United States, McCaster had 90 days after the Sixth Circuit rendered its decision on direct appeal to file a petition for certiorari with the United States Supreme Court.  The record shows that the Clerk did not receive and docket McCaster's § 2255 Motion until October 1, 2012.  Therefore, the Court should conclude that McCaster filed his § 2255 Motion outside of the one-year statute of limitations.

The government argues that McCaster should not benefit from the prison mailbox filing rule.[1]  McCaster's § 2255 includes two additional documents, an affidavit dated September 19, 2012, and a letter to the Clerk of Court dated September 27, 2012, suggesting that McCaster delivered his § 2255 Motion to prison staff for mailing no earlier than September 27, 2012.  The United States has also provided an affidavit from Robert L. Kanavy, a correctional systems officer at USP-Terre Haute.  According to the Kanavy affidavit, McCaster was housed at USP-Terre Haute until July 17, 2012.  USP-Terre Haute maintains a system for inmates to send legal mail.  Inmates have the option to send legal mail either by certified mail or by registered mail.  USP-Terre Haute keeps a log of all prisoner mail sent by certified or registered mail.  There is no record of McCaster sending any mail by certified or registered mail for the period from May 2, 2012, through May 10, 2012.  USP-Terre Haute keeps no records about regular mail sent by prisoners.  The United States argues that in the absence of any evidence that McCaster actually mailed his § 2255 on May 3, 2012, or that the Clerk received a copy of the § 2255 Motion for filing soon after May 3, 2012, McCaster should not be allowed to avail himself of the prison mailbox rule to save his late-filed § 2255 Motion.

---

[1] The United States also asserts that McCaster is not entitled to equitable tolling under any theory.  Because McCaster has not raised the issue of equitable tolling in any of his filings, the Court need not decide whether equitable tolling of the one-year statute of limitations is appropriate in this case.

The United States has also addressed the merits of McCaster's claims of ineffective assistance of counsel. The government points out that McCaster has argued as grounds for his §2255 Motion that his trial attorney did not explain the elements of the offense of "using" or "carrying" a firearm during and in relation to a drug trafficking offense in violation of 18 U.S.C. § 924(c). In point of fact, the indictment charged McCaster with the entirely separate crime of possessing a firearm in furtherance of a drug trafficking offense under 18 U.S.C. § 924(c)(1)(A). As such, McCaster's attorney had no duty to explain the elements of a separate, uncharged offense of using or carrying a firearm during or in relation to a drug trafficking offense. McCaster has failed to show then that counsel's representation was objectively unreasonable or that counsel's representation prejudiced McCaster in anyway. Therefore, the Court should deny McCaster's Motion for relief under 28 U.S.C. § 2255.

On July 23, 2013, McCaster filed a Motion to Amend (ECF No. 10), requesting leave to address additional points in support of his § 2255 Motion. McCaster states that he "understood that he was pleading to § 924(c)(1) and that the Count did not include brandishing" but "[a]t sentencing the Court enhanced Petitioner's sentence from five to seven years by the preponderance of the evidence standard." McCaster argues that the Court's decision to enhance his sentence for brandishing the firearm runs afoul of the Supreme Court's decision in *Alleyne v. United States*, 131 S. Ct. 2151 (2013). McCaster does not specifically seek the Court's permission to amend his § 2255 Motion. McCaster only argues that the Supreme Court's intervening decision in *Alleyne* should relate back to McCaster's initial § 2255 Motion pursuant to Federal Rule of Civil Procedure 15(d) and that the Court should take up the Motion to Amend as a supplemental brief. McCaster further requests leave to clarify the circumstances

surrounding his mailing of his § 2255 Motion in May 2012. McCaster states in his brief that he placed his § 2255 Motion in the USP-Terre Haute "institutional mailing system not through the mail room." McCaster has appended a declaration to this Motion to Amend, declaring under penalty of perjury that the facts asserted in his brief are true pursuant to 28 U.S.C. § 1746. The United States has not responded to the Motion.

## STANDARD OF REVIEW

McCaster seeks habeas relief in this case pursuant to 28 U.S.C. § 2255(a). The statute reads as follows:

> [a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

"A prisoner seeking relief under 28 U.S.C. § 2255 must allege either (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid."[2] A § 2255 motion is not a substitute for a direct appeal.[3] "[N]onconstitutional claims that could have been raised on appeal, but were not, may not be asserted in collateral proceedings."[4] "Defendants must

---

[2] *McPhearson v. United States*, 675 F.3d 553, 558-59 (6th Cir. 2012) (internal quotation marks omitted).

[3] *Ray v. United States*, 721 F.3d 758, 761 (6th Cir. 2013); *see also Sunal v. Lange*, 332 U.S. 174, 178 (1947).

[4] *Stone v. Powell*, 428 U.S. 465, 477 n.10 (1976).

assert their claims in the ordinary course of trial and direct appeal."[5] The rule, however, is not absolute:

> If claims have been forfeited by virtue of ineffective assistance of counsel, then relief under § 2255 would be available subject to the standard of *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). In those rare instances where the defaulted claim is of an error not ordinarily cognizable or constitutional error, but the error is committed in a context that is so positively outrageous as to indicate a "complete miscarriage of justice," it seems to us that what is really being asserted is a violation of due process.[6]

Procedural default bars even constitutional claims that a defendant could have raised on direct appeal, but did not, by unless the defendant demonstrates cause and prejudice sufficient to excuse his failure to raise the issues previously.[7] Alternatively, a defendant may obtain review of a procedurally defaulted claim by demonstrating his "actual innocence."[8]

Dismissal of a § 2255 motion is mandatory if the motion, exhibits, and the record of prior proceedings show that the petitioner is not entitled to relief.[9] If the habeas court does not dismiss the motion, the court must order the United States to file its "answer, motion, or other response within a fixed time, or take other action the judge may order."[10] The petitioner is then entitled to

---

[5] *Grant v. United States*, 72 F.3d 503, 506 (6th Cir. 1996).

[6] *Id.*

[7] *See El-Nobani v. United States*, 287 F.3d 417, 420 (6th Cir. 2002) (withdrawal of guilty plea); *Peveler v. United States*, 269 F.3dd 693, 698-99 (6th Cir. 2001) (new Supreme Court decision issued during pendency of direct appeal); *Phillip v. United States*, 229 F.3d 550, 552 (6th Cir. 2000) (trial errors).

[8] *Bousley v. United States*, 523 U.S. 614, 662 (1998); *Vanwinkle v. United States*, 645 F.3d 365, 369-70 (6th Cir. 2011).

[9] Rule 4(b), Rules Governing Section 2255 Proceedings for the United States District Courts ("Section 2255 Rules").

[10] *Id.*

reply to the government's response.[11] The habeas court may also direct the parties to provide additional information relating to the motion.[12]

"Habeas petitions must meet heightened pleading requirements . . . ."[13] "Generally, courts have held that conclusory allegations alone, without supporting factual averments, are insufficient to state a valid claim under § 2255."[14] An evidentiary hearing is required "to determine the truth of petitioner's claims" only where a factual dispute exists.[15] No hearing is required "when a petitioner's claims cannot be accepted as true because they are contradicted by the record, inherently incredible, or are conclusions rather than statements of fact."[16] Where, as here, the judge considering the § 2255 motion also presided over the trial, the judge may rely on his recollections of the trial.[17] The petitioner has the burden of proving that he is entitled to relief by a preponderance of the evidence.[18]

## ANALYSIS

### I. Timeliness of McCaster's Motion to Vacate

---

[11] Rule 5(d), Section 2255 Rules.

[12] Rule 7, Section 2255 Rules.

[13] *See McFarland v. Scott*, 512 U.S. 849, 856 (1994) (construing requirements of 28 U.S.C § 2254 Rule 2(c) identical to the requirements of 28 U.S.C. § 2255 Rule 2(c)).

[14] *Jefferson v. United States*, 730 F.3d 537, 547 (6th Cir. 2013) (collecting cases).

[15] *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007) (quoting *Turner v. United States*, 183 F.3d 474, 477 (6th Cir. 1999)).

[16] *Ray v. United States*, 721 F.3d 758, 761 (6th Cir. 2013) (citations and internal quotation marks and brackets omitted).

[17] *Id.*

[18] *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

The first issue presented is whether McCaster filed his § 2255 Motion within the statute of limitations. "A motion filed pursuant to 28 U.S.C. § 2255 is subject to a one-year statute of limitations, with the limitations period beginning to run from the latest of four possible dates."[19]

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.[20]

In this case it is undisputed that the statute of limitations for McCaster's collateral attack began to run from the date on which the judgment of conviction became final. "A judgment of conviction becomes final when the time expires for filing a petition for certiorari contesting the appellate court's affirmation of the conviction."[21] The Sixth Circuit affirmed the Court's judgment on February 14, 2011, and McCaster's time for filing a petition for cert ran 90 days later on May 15, 2011. Therefore, McCaster had one year from May 15, 2011, in which to seek collateral review of his conviction by filing a motion for relief under 28 U.S.C. § 2255.

The Court holds that McCaster's § 2255 Motion was not timely "filed" within the one-year statute of limitations. The United States Supreme Court adopted the prison mailbox filing

---

[19] *Jefferson v. United States*, 730 F.3d 537, 544 (6th Cir. 2013) (quoting *Benitez v. United States,* 521 F.3d 625, 629 (6th Cir. 2008)).

[20] 28 U.S.C. § 2255(f); *Phillips v. United States*, 734 F.3d 573, 580 (6th Cir. 2013).

[21] *Clay v. United States*, 537 U.S. 522, 525 (2003).

rule in *Houston v. Lack,* 487 U.S. 266 (1988). "In *Houston*, the Supreme Court held that a prisoner's notice of appeal will be deemed timely filed if it is delivered to the proper prison authorities for forwarding to the district court within the time allotted for an appeal."[22] The Sixth Circuit has applied the prison mailbox rule not just to appeals but to *pro se* prisoner mailings of many kinds, including motions for relief under 28 U.S.C. § 2255.[23] Moreover, Rule 3(d) of the Section 2255 Rules provides as follows:

> A paper filed by an inmate confined in an institution is timely if deposited in the institution's internal mailing system on or before the last day for filing. If an institution has a system designed for legal mail, the inmate must use that system to receive the benefit of this rule. Timely filing may be shown by a declaration in compliance with 28 U.S.C. § 1746 or by a notarized statement, either of which must set forth the date of deposit and state that first-class postage has been prepaid.[24]

What is more, the Sixth Circuit accepts the date on which a prisoner signs a paper under penalty of perjury as the date the prisoner handed over the paper to prison officials for mailing.[25]

In this case McCaster has failed to comply with the requirements of Rule 3(d) of the Section 2255 Rules. McCaster has stated in an affidavit that he placed an original and two

---

[22] *Towns v. United States*, 190 F.3d 468, 469 (6th Cir. 1999).

[23] *Id.*

[24] Rule 3(d) Section 2255 Rules. Paragraph (d) of Rule 3 was adopted as part of the 2004 amendments to the Section 2255 Rules.

[25] *Towns*, 190 F.3d at 469 *Id.* ("Although Towns's motion does not contain a certificate of service, he signed the motion under the penalty of perjury on April 23, 1997. This indicates that he delivered the motion to prison mailroom personnel before the April 24, 1997, deadline. Hence, the motion was timely."); *see also Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008) (referring to the "handing-over rule" and the assumption "that, absent contrary evidence, a prisoner does so on the date he or she signed the complaint."); *Goins v. Saunders,* 206 F. App'x 497, 498 n.1 (6th Cir. 2006) (per curiam) ("[W]e treat the petition as filed on the date [the prisoner] signed it."); *Bomer v. Bass,* 76 Fed.Appx. 62, 63 (6th Cir. 2003).

copies of his § 2255 Motion in "the institutional mail box" on May 3, 2012. McCaster clarified in his supplemental filing that he utilized the "institutional mailing system, not the actual mail room." The § 2255 Motion was signed and dated May 3, 2012, and included a certificate of service, stating that the papers were served by first class mail on May 3, 2012. McCaster's accompanying memorandum of law was also signed and dated May 3, 2012. However, the certificate of service attached to the memorandum certified that McCaster put the document "into the hands of prison officials for legal mailing." This proof would satisfy Rule 3(d)'s requirement that McCaster's filings be "deposited in the institution's internal mailing system on or before the last day for filing" but only if USP-Terre Haute did not have "a system designed for legal mail."

Unfortunately for McCaster, the proof before the Court shows that it did. The United States has adduced evidence that USP-Terre Haute has a system for handling legal mail whereby inmates bring legal mail to a daily "legal mail call" and follow specific procedures to hand over legal mail to prison staff for mailing. According to the Kanavy affidavit, inmates may send legal mail either by certified mail or registered mail. Prison staff maintains a mail log for all certified mail and registered mail sent and received by inmates at USP-Terre Haute. What is more, there is no proof that McCaster used USP-Terre Haute's system for legal mail to send his § 2255 Motion to the Court. The mail logs at USP-Terre Haute for early May 2012 show that McCaster did not send any certified or registered mail during that time. As such, the proof shows that McCaster did not send his § 2255 Motion through USP-Terre Haute's "system designed for legal mail." As a result, the Court holds that McCaster cannot "receive the benefit" of Rule 3(d)'s version of the mailbox rule. Therefore, McCaster's § 2255 is time-barred.

The Court's holding is entirely consistent with the Supreme Court's dicta in *Houston* where the majority predicted that the mailbox filing rule would be a "bright-line rule, not an uncertain one" due to the assumed fact that "reference to prison mail logs will generally be a

straightforward inquiry."[26]   In this case the government cautions that accepting McCaster's

Motion now would invite prisoners to file time-barred motions under § 2255 along with "post-

dated documents alleging the motion was timely filed" and place the United States in the

position of "attempting to prove a negative."[27]   Indeed, the *Houston* court noted that "the

rejection of the mailbox rule in other contexts had been based in part on concerns that it would

increase disputes and uncertainty over when a filing occurred and that it would put all the

evidence about the date of filing in the hands of one party."[28]   The case at bar clearly illustrates

the potential administrative difficulties the *Houston* court sought to address.   In this case strict

enforcement of Rule 3(d) is the prescriptive to avoid time-consuming judicial inquiries into the

issue of whether an inmate like McCaster acted within the statute of limitations to mail his

papers to the Court.   Therefore, McCaster's time-barred § 2255 Motion must be denied for this

reason alone.

## II. Ineffective Assistance of Counsel

Out of an abundance of caution, the Court will reach the merits of McCaster's claims of

ineffective assistance as though he had filed a timely petition for relief.   McCaster's § 2255

Motion argues ineffective assistance of counsel based on counsel's advice about the facts

---

[26] *Houston v. Lack*, 487 U.S. 266, 275 (1988) (stating in dicta that a "*pro se* prisoner does not anonymously drop his notice of appeal in a public mailbox--he hands it over to prison authorities who have well-developed procedures for recording the date and time at which they receive papers for mailing and who can readily dispute a prisoner's assertions that he delivered the paper on a different date.").

[27] The government goes on to argue that the mailbox filing rule is inapplicable here because this is not the typical case where a prisoner delivered a document for mailing to a prison official and the document reached the clerk of court for filing some time after the limitations period had run.   McCaster claims that his filing simply never reached the Court.   The Court finds that this concern also counsels in favor of strict enforcement of the requirements of Rule 3(d).

[28] *Id.* (citing *United States v. Lombardo,* 241 U.S. 73, 78 (1916)).

necessary to prove McCaster guilty of the § 924(c) offense. A claim that ineffective assistance of counsel has deprived a defendant of his Sixth Amendment right to counsel is controlled by the standards stated in *Strickland v. Washington*, 466 U.S. 668 (1984). To demonstrate deficient performance by counsel, a § 2255 petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness."[29] "A court considering a claim of ineffective assistance must apply a strong presumption that counsel's representation was within the wide range of reasonable professional assistance. The challenger's burden is to show that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."[30]

To demonstrate prejudice, the petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[31] "A reasonable probability is a probability sufficient to undermine confidence in the outcome."[32] The petitioner must do more than prove that counsel's errors had "some conceivable effect on the outcome of the proceeding;" the "errors must be so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."[33] A claim of ineffective assistance of counsel is a mixed question of fact and law.[34]

---

[29] *Strickland v. Washington*, 466 U.S. 668, 688 (1984).

[30] *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (internal quotation marks and citations omitted).

[31] *Strickland*, 466 U.S. at 694. Additionally, "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant." *Id.* at 697. If a reviewing court finds a lack of prejudice, it need not determine whether, in fact, counsel's performance was deficient. *Id.*

[32] *Id.*

[33] *Richter*, 562 U.S. at 104 (internal quotation marks and citations omitted); *see also id.* at 111-12 ("In assessing prejudice under *Strickland*, the question is not whether a court can be

"Surmounting *Strickland*'s high bar is never an easy task."[35]

An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. *Strickland*, 466 U.S., at 689-690, 104 S. Ct. 2052. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." *Id.*, at 689, 104 S. Ct. 2052; *see also Bell v. Cone*, 535 U.S. 685, 702, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002); *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S. Ct. 838, 122 L. Ed. 2d 180 (1993). The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. *Strickland*, 466 U.S., at 690, 104 S. Ct. 2052.[36]

As the only two grounds for relief asserted in his § 2255 Motion, McCaster contends his counsel failed to explain the government's burden to prove that McCaster "used" or "carried" a firearm during and in relation to a drug trafficking offense. Title 18 U.S.C. § 924(c)(1)(A) makes it a crime and sets forth the punishments for "any person who, during and in relation to any . . . drug trafficking crime . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a

---

certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. . . . The likelihood of a different result must be substantial, not just conceivable.") (citations omitted); *Wong v. Belmontes*, 558 U.S. 15, 27 (2009) (per curiam) ("But *Strickland* does not require the State to rule out [a more favorable outcome] to prevail. Rather, *Strickland* places the burden on the defendant, not the State, to show a 'reasonable probability' that the result would have been different.").

[34] *McPhearson*, 675 F.3d at 559.

[35] *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).

[36] *Richter*, 562 U.S. at 105.

firearm . . . ."[37]   The Sixth Circuit has held that § 924(c)(1)(A) "criminalizes two separate and distinct offenses."[38]   Based on a thorough analysis of the statutory text, the legislative history, and the requisite elements of proof, the Court of Appeals in *United States v. Combs* construed § 924(c)(1)(A) to set forth two crimes: "(1) *using or carrying* a firearm *during and in relation to* a drug trafficking crime, and (2) *possessing* a firearm *in furtherance of* a drug trafficking crime."[39] Each offense carries a minimum sentence based on aggravating factors: a violation of § 924(c)(1)(A) carries 5 years, a minimum of 7 years "if the firearm is brandished," and a minimum of 10 years "if the firearm is discharged."[40]

The fact that § 924(c)(1)(A) "criminalizes two separate and distinct offenses" is highly relevant in this case because McCaster's § 2255 Motion argues that counsel should have advised him about the meaning of "using" and "carrying" a firearm, as those terms are used in § 924(c)(1)(A).   The problem lies in the fact that McCaster was never charged with "using" or "carrying" a firearm during and in relation to his admitted drug trafficking activities.   The underlying criminal indictment charged McCaster with the other offense described in § 924(c)(1)(A): possessing a firearm in furtherance of a drug trafficking crime.   Count 2 of the indictment against McCaster alleged as follows:

> On or about June 5, 2008, in the Western District of Tennessee, the defendant,
> --------------------------------ANTHONY MCCASTER-----------------------------------
> did unlawfully, knowingly and intentionally *possess in furtherance of* a drug
> trafficking crime for which he may be prosecuted in a court of the United States,

---

[37] 18 U.S.C. § 924(c)(1)(A).

[38] *United States v. Combs*, 369 F.3d 925, 933 (6th Cir. 2004).

[39] *Id.* at 931 (emphasis in original).

[40] § 924(c)(1)(A)(i)-(iii).

that is "possession with the intent to distribute a mixture and substance containing a detectable amount of marijuana," in violation of Title 21, United States Code, Section 841(a)(1), a firearm, that is, a Jimenez 9mm caliber semi-automatic pistol, in violation of Title 18, United States Code, Section 924(c).[41]

As is clear from the indictment, McCaster was charged with possessing the firearm in furtherance of a drug trafficking offense. The indictment did not charge McCaster with using and carrying the firearm during and in relation to a drug trafficking offense. For purposes of McCaster's claims of ineffective assistance, McCaster has not shown why counsel had a duty to advise him about a charge he never faced. As a result, the Court holds that McCaster has failed to show how counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."[42]

In his argument concerning ground one of his § 2255 Motion, McCaster contends he was not "aware of the Supreme Court's holding in" *Bailey v. United States*, 516 U.S. 137 (1995) and would have elected to go to trial if counsel had properly advised him about what proof was required to show "use" of a firearm for purposes of §924(c)(1). The Supreme Court in *Bailey* stated that "[h]ad Congress intended possession alone to trigger liability under § 924(c)(1), it easily could have so provided."[43] The Supreme Court "concluded that 'use' of a firearm must mean more than mere possession and requires some active employment of the firearm by a person who commits a drug offense."[44] McCaster's reliance on the Supreme Court's decision in

---

[41] Indictment, *United States v. Anthony McCaster*, 2:09-cr-20110-STA (W.D. Tenn.), ECF No. 1 (emphasis added).

[42] *Richter*, 562 U.S. at 104 (internal quotation marks and citations omitted).

[43] *Bailey v. United States*, 516 U.S. 137, 143 (1995).

[44] *Combs*, 369 F.3d at 932.

*Bailey* is misplaced. McCaster was never charged with "using" a firearm in violation of 18 U.S.C. § 924(c)(1)(A) but rather with possession of a firearm in furtherance of a drug trafficking crime. McCaster pleaded guilty to possessing a firearm in furtherance of a drug trafficking offense. Furthermore, as the Sixth Circuit has explained, "Congress enacted the current version of [18 U.S.C. § 924(c)(1)(A)] in 1998 in response to the Supreme Court's decision in *Bailey v. United States,* 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995). *Bailey* examined an earlier version of [§ 924(c)(1)(A)] that prohibited only 'using or carrying a firearm during and in relation to' drug trafficking."[45] Therefore, McCaster has not shown an entitlement to relief based on counsel's supposed failure to advise him about *Bailey*.

Likewise, in his argument concerning ground two of his § 2255 Motion, McCaster contends that counsel failed to advise him that he could not be convicted of "carrying" a firearm under § 924(c)(1) simply by possessing the weapon. And McCaster adds that "the police report . . . [w]ill clearly show that [McCaster] did not carry a firearm in furtherance of a drug trafficking crime."[46] Once again, McCaster was not charged with carrying a firearm in furtherance of a drug trafficking crime and did not plead guilty to such an offense. To be clear, section 924(c)(1)(A) does not make it a crime under federal law to carry a firearm in furtherance of a drug trafficking offense. The statute criminalizes the separate conduct of (1) carrying a firearm during and in relation to a drug trafficking offense and (2) possessing a firearm in furtherance of a drug trafficking offense. The Supreme Court case cited by McCaster in support of his claim on ground two addressed the crime of carrying a firearm during and in relation to a drug trafficking offense. In *Smith v. United States*, 508 U.S. 223 (1993), the Supreme Court construed the phrase

---

[45] *Id.* at 931-32 (citing *Bailey,* 516 U.S. at 143-44).

"in relation to" as it is used in § 924(c)(1) and held that the "firearm must have some purpose or effect with respect to the drug trafficking crime; its presence or involvement cannot be the result of accident or coincidence."[47]  *Smith* has no application in McCaster's case because McCaster was not charged with "carrying" a firearm "in relation to" a drug trafficking offense.  And the Sixth Circuit's unreported decision in *United States v. McKenzie* concerned the application of a sentencing enhancement at U.S.S.G. § 2K2.1(b)(6) in a case involving a conviction under 18 U.S.C. § 922(g).[48]  *McKenzie* did not involve the construction or application of § 924(c)(1)(A) at all.  Thus, the Court finds that McCaster has not shown how counsel's failure to advise him of the law on "carrying" a firearm constituted ineffective assistance.  Therefore, McCaster's § 2255 Motion must be denied.

It is true that McCaster's memorandum states in one place that the government "had to clearly show that the firearm was possessed to advance or promote the commission of the underlying offense" and in a subsequent paragraph that the government had to "illustrate through specific facts which tie the Defendant to the firearm that the firearm was possessed to advance or promote the criminal activity."[49]  The Sixth Circuit in *United States v. Mackey*, 265 F.3d 457 (6th Cir. 2001) analyzed the offense of possessing a firearm in furtherance of a drug trafficking offense under § 924(c)(1)(A), the crime with which McCaster was charged and to which he

---

[46] Pet.'s Mem. of Law in Support 5 (ECF No. 1).

[47] *Smith v. United States*, 508 U.S. 223, 238 (1993).

[48] *United States v. McKenzie*, 410 F. App'x 943, 946 (6th Cir. 2011) (concluding that the four-level enhancement at § 2K2.1(b)(6) did not apply where the government had "not proven by a preponderance of the evidence that McKenzie's firearm had the potential to facilitate his [simple] marijuana possession").

[49] Pet.'s Mem. of Law in Support 6.

pleaded guilty. *Mackey* construed the phrase "in furtherance of" to require proof that a "firearm was possessed to advance or promote the commission of the underlying [drug trafficking] offense."[50] The Court finds that unlike McCaster's inapt references to the crime of "using" or "carrying" a firearm during and in relation to a drug trafficking offense, these passing remarks are relevant to McCaster's confessed crime of "possessing" a firearm "in furtherance of" his drug trafficking activities,.

Even so, the Court need not decide whether McCaster's short, cursory comments alleging that counsel gave McCaster deficient advice about "possessing a firearm to advance or promote" a drug trafficking offense shows constitutionally deficient assistance of counsel. The Court concludes that McCaster has failed to show prejudice from this advice. In the context of a guilty plea, in order "to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."[51] In other words, McCaster must convince the Court that "a decision to reject the plea bargain would have been rational under the circumstances."[52] In this case a guilty plea was in McCaster's best interest because the evidence to convict him of possessing a firearm in furtherance of a drug trafficking offense was strong. At the change of plea hearing, the government reviewed all of the proof that would have been presented at trial, and McCaster admitted each of the predicate facts introduced by the United States.

---

[50] *United States v. Mackey*, 265 F.3d 457, 462 (6th Cir. 2001).

[51] *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

[52] *Padilla*, 559 U.S. at 372.

First, McCaster admitted facts showing that he was guilty of drug trafficking in violation of 21 U.S.C. § 841(a)(1), facts which McCaster does not deny even now in his collateral attack on his sentence. Police recovered a large bag of marijuana from the vehicle occupied by McCaster and another individual at the time of McCaster's arrest. Police also discovered a plastic bag holding seven smaller baggies of marijuana between the console and the driver seat where McCaster was sitting just before the police made contact. In his subsequent statement to police, McCaster described in some detail his regular, ongoing drug trafficking activities.

Second, there is no real dispute that McCaster possessed the firearm found by police in the car he occupied at the time of his arrest. The police found a loaded 9mm semi-automatic pistol with a chambered round directly adjacent to McCaster's driver seat and underneath the plastic bag with the seven smaller baggies of marijuana. In his statement to police, McCaster informed that he had purchased the 9mm "on the street" for protection from others who might try to rob him. Additional investigation showed that the 9mm McCaster possessed was reported stolen in the state of Illinois. Each of these facts is probative of a "specific nexus" between McCaster's drug-dealing activities and his possession of the weapon.[53] McCaster has not shown what defense his attorney could have raised to rebut this proof or what grounds existed to have the drugs, the firearm, or McCaster's custodial statement to the police excluded as evidence.

---

[53] *Mackey*, 265 F.3d at 462. *Mackey* went on to enumerate the following factors that might show how possession of a weapon was "in furtherance of" an underlying drug trafficking crime: (1) whether the firearm was loaded; (2) the type of firearm; (3) whether the weapon was stolen or legitimately possessed; (4) the type of drug activity conducted; and (5) the time and circumstances under which the gun was found. *Id.* As is clear from the record, more than one of these factors is present in this case, suggesting that McCaster possessed the firearm in furtherance of his drug trafficking enterprise.

Even assuming then that counsel incorrectly advised McCaster that his presence near a firearm would sustain a conviction under § 924(c)(1), the Court finds that the proof the government had against McCaster and the facts admitted by McCaster as part of his guilty plea were more than ample to show that he possessed the 9mm in furtherance of his drug trafficking activities. McCaster's decision to accept an offer from the United States appears to have had the effect of reducing his sentencing exposure. As the government notes in its brief, in exchange for McCaster's change of plea as to counts 1 and 2, the government agreed to dismiss count 3, the charge of being a felon in possession of a firearm, as part of the plea deal. McCaster also received the benefit of a two-level reduction in his total offense level for acceptance of responsibility, thereby reducing his guidelines range on count 1 from 37 to 46 months down to 30 to 37 months. In other words, without credit for acceptance of responsibility, McCaster would have faced a sentence greater than the 34 months the Court imposed as to count 1. Therefore, McCaster's plea was in his best interest under all of the circumstances, and McCaster has not established "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[54]

### III. Matters Addressed in McCaster's Motion to Amend

As previously noted, McCaster filed a Motion to Amend (ECF No. 10), which is properly construed not as a motion but as a supplemental brief in support of his § 2255 Motion. The primary issue addressed in McCaster's supplemental filing is his contention that "[a]t sentencing the Court enhanced Petitioner's sentence from five to seven years by the preponderance of the evidence standard" and that the Supreme Court subsequently decided in *Alleyne* that the

---

[54] *Strickland*, 466 U.S. at 694.

brandishing enhancement is a jury question. The Court need not reach the legal implications of *Alleyne* in McCaster's case because the record belies McCaster's claim about the brandishing enhancement. The Court did not enhance McCaster's sentence on the § 924(c)(1)(A) charge for brandishing. No discussion of brandishing appears in the transcript of the sentencing hearing. The brandishing enhancement under 18 U.S.C. § 924(c)(1)(A)(ii) carries a mandatory minimum sentence of 7 years; whereas, the Court sentenced McCaster to 5 years. Therefore, the Court concludes that the arguments raised in McCaster's Motion to Amend are without merit, and the Motion to Amend is **DENIED**.

For all of these reasons, McCaster's Motion to Vacate Judgment under 28 U.S.C. § 2255 is **DENIED**, and this case is **DISMISSED**.

## IV. Appeal Issues

Twenty-eight U.S.C. § 2253(a) requires the district court to evaluate the appealability of its decision denying a § 2255 motion and to issue a certificate of appealability ("COA") "only if the applicant has made a substantial showing of the denial of a constitutional right."[55] No § 2255 movant may appeal without this certificate. The COA must indicate the specific issue(s) that satisfy the required showing.[56] A "substantial showing" is made when the movant demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve

---

[55] 28 U.S.C. § 2253(c)(2); *see also* Fed. R. App. P. 22(b).

[56] 28 U.S.C. §§ 2253(c)(2) & (3).

encouragement to proceed further."[57] A COA does not require a showing that the appeal will succeed.[58] Courts should not issue a COA as a matter of course.[59]

In this case, for the reasons previously stated, the issues raised by McCaster in support of his § 2255 Motion lack substantive merit and, therefore, he cannot present a question of some substance about which reasonable jurists could differ. Therefore, the Court **DENIES** a certificate of appealability.

The Sixth Circuit has held that the Prison Litigation Reform Act of 1995, 28 U.S.C. §§ 1915(a)-(b), does not apply to appeals of orders denying § 2255 motions.[60] Rather, to appeal *in forma pauperis* in a § 2255 case, and thereby avoid the appellate filing fee required by 28 U.S.C. §§ 1913 and 1917, the prisoner must obtain pauper status pursuant to Federal Rule of Appellate Procedure 24(a).[61] Rule 24(a) provides that a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit.[62] However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, or

---

[57] *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotation marks and citation omitted); *see also Henley v. Bell*, 308 F. App'x 989, 990 (6th Cir. 2009) (per curiam) (same).

[58] *Miller-El*, 537 U.S. at 337; *Caldwell v. Lewis*, 414 F. App'x 809, 814-15 (6th Cir. 2011).

[59] *See Bradley v. Birkett*, 156 F. App'x 771, 773 (6th Cir. 2005).

[60] *See Kincade v. Sparkman*, 117 F.3d 949, 951 (6th Cir. 1997).

[61] *Id.* at 952.

[62] *See* Fed. R. App. P. 24(a)(1).

otherwise denies leave to appeal *in forma pauperis*, the prisoner must file his motion to proceed *in forma pauperis* in the appellate court.[63]

In this case, for the same reasons the Court denies a certificate of appealability, the Court determines that any appeal would not be taken in good faith. It is therefore **CERTIFIED**, pursuant to Federal Rule of Appellate Procedure 24(a), that any appeal in this matter would not be taken in good faith. Leave to appeal *in forma pauperis* is **DENIED**.[64]

<u>**CONCLUSION**</u>

McCaster's Motion to Accept His 28 U.S.C. § 2255 Out of Time is **DENIED**. Even on the merits, McCaster has not shown that counsel was ineffective in advising him during plea negotiations. The motion, exhibits, and the record of prior proceedings show that the McCaster is not entitled to relief. Therefore, McCaster's Motion to Vacate Judgment pursuant to 28 U.S.C. § 2255 is **DENIED**.

**IT IS SO ORDERED.**

                        **s/ S. Thomas Anderson**
                        S. THOMAS ANDERSON
                        UNITED STATES DISTRICT JUDGE

                        Date: May 26, 2015.

---

[63] *See* Fed. R. App. P. 24(a) (4)-(5).

[64] If McCaster files a notice of appeal, he must also pay the full $505 appellate filing fee or file a motion to proceed *in forma pauperis* and supporting affidavit in the Sixth Circuit Court of Appeals within 30 days.